## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| JONATHAN I. HILL,        ) | |
|                      ) | |
|     Petitioner,      ) | |
|                      ) | |
|     v.                  ) | 13-03427 |
|                      ) | |
| UNITED STATES OF AMERICA,   ) | |
|                      ) | |
|     Respondent.    ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

This matter is before the Court on the Motion of Petitioner, Jonathan I. Hill, to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (d/e 1) (hereinafter the "§ 2255 Petition").  Also pending are Hill's Motion for Appeal Bond (d/e 3), Motion for Hearing (d/e 4), Motion for Summary Judgment (d/e 7), Motion for Preliminary Injunction (d/e 11), Motion to Request/Subpoena Records (d/e 12), Motion to Amend/Supplement Record with New Evidence (d/e 13), Motion for Leave to File Reply (d/e 18), Motion to Supplement the Record with New Evidence (d/e 22), and Motion to Supplement Status Conference (d/e 29). Respondent United States' Motion to Supplement Its Response to

Petitioner's Motion Under 28 U.S.C. § 2255 (d/e 17) and Motion to Supplement Response to Petitioner's Motion (d/e 27) are likewise pending. Because Hill has failed to show that he is entitled to relief, the § 2255 Petition (d/e 1) is DISMISSED. All motions to supplement the record (d/e 13; d/e 17; d/e 18; d/e 22; d/e 27; d/e 29) are GRANTED; each has been read and taken under advisement. All other pending motions in this matter are DENIED AS MOOT.

## BACKGROUND

On November 18, 2005, the Government filed an Indictment alleging that Jonathan I. Hill had committed the crime of possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Indictment, United States v. Hill, No. 05-cr-30098 (C.D. Ill. Nov. 18, 2005). Hill appeared before United States Magistrate Judge Byron G. Cudmore and pleaded guilty on May 2, 2006. Minute Entry, United States v. Hill, No 05-cr-30098 (C.D. Ill. May 2, 2006). Following three motions by Hill to continue his sentencing, Hill appeared before United States District Judge Jeanne E. Scott on March 19, 2007, and was sentenced to 48

months' imprisonment, 3 years' supervised release, and a $100 special assessment.

After his initial imprisonment at the United States Penitentiary at Leavenworth, Kansas, Hill was transferred to the Triangle Center halfway house in Springfield, Illinois, to fulfill the final months of his term of imprisonment.  See United States' Resp. to Mot. Under § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, d/e 10, Ex. 1 (hereinafter "United States' Resp."). At that time, Hill's projected release date from Bureau of Prisons (BOP) custody was April 24, 2009.  See id.  Hill's term of imprisonment was interrupted, however, when he was arrested and detained in custody of the State of Illinois on January 30, 2009, on charges that he had entered a home and struck a woman on the head with a pistol.  See United States' Resp., d/e 10, Ex. 2; § 2255 Pet., d/e 1, at 4.  At the time of his arrest, Hill still needed to serve approximately three months in BOP custody at Triangle Center. Because he was detained on the State charges, however, Hill was not able to report back to Triangle Center as required under the rules of his federal sentence, resulting in a change in his federal custody status to one of "escape."  See United States' Resp., d/e 10,

Ex. 3, at 2; § 2255 Pet., d/e 1, at 4.  Consequently, the United

States Marshal Service lodged a detainer with the Sangamon

County Jail, the facility where Hill was initially detained, to inform

the facility of Hill's unfulfilled federal sentence and to request notice

of his release in order to resume federal custody.  See id.

Eventually, Hill was convicted of the State offense of Aggravated

Battery and sentenced to 7 years' imprisonment.  See United States'

Resp., d/e 10, at 2; id., Ex. 2; id. Ex. 4; § 2255 Pet., d/e 1, at 4.

Hill served this sentence at IDOC's Taylorville facility.  See United

States' Resp., d/e 10, Ex 5.

Despite the lodged federal detainer, IDOC released Hill from

custody on April 30, 2012, and did not return him to BOP custody.

See United States' Resp., d/e 10, Ex. 5; § 2255 Pet., d/e 1, at 4; see

also Attach. to United States' Supplement, d/e 27-1 (copy of the

detainer with handwritten note indicating that on August 30, 2011,

Jill Good, of the United States Marshal's Office for the Central

District of Illinois, purportedly told jail officials that Hill's federal

sentence of imprisonment was satisfied and that he should report

to the Federal Probation Office).  The same day, Hill informed the

United States Probation Office of his release from custody, and he

reported on May 1, 2012, to meet with a probation officer to review the conditions of his supervised release.  See United States' Resp., d/e 10, Ex. 6; § 2255 Pet., d/e 1, at 4.

On April 26, 2013, nearly a year after Hill began his supervised release and first reported to the United States Probation Office, a Petition for Revocation was filed alleging that Hill had violated the conditions of supervised release multiple times between July 4, 2012, and April 4, 2013.  Pet. for Revocation, United States v. Hill, No. 05-cr-30098 (C.D. Ill. Apr. 26, 2013).  Among the alleged violations were possession of cocaine as shown by a positive urine test on August 30, 2012 (Violation Number 1B); missed drug tests in July and December of 2012 (Violation Numbers 2A and 2B); and a violation of Illinois's drug possession law in March 2013 (Violation 1C).  Id.  An arrest warrant was issued on April 26, 2013; Hill was arrested on May 7, 2013; and this Court eventually revoked his supervised release on July 8, 2013, for the above violations, sentencing Hill to 12 months' imprisonment to run consecutive to any uncompleted term of imprisonment followed by 2 years' supervised release.  Minute Entry, United States v. Hill, No. 05-cr-30098 (C.D. Ill. July 8, 2013) (also reflecting that Hill admitted to a

portion of the charges).  This Court dismissed the other violations alleged in the petition for revocation—two violations of Illinois law for resisting arrest (Violation Numbers 1A and 1D) and three instances of failure to report law enforcement contact (Violation Numbers 3A, 3B, and 3C).  Compare Pet. for Revocation, United States v. Hill, No. 05-cr-30098 (C.D. Ill. Apr. 26, 2013), and Revocation J., United States v. Hill, No. 05-cr-30098 (C.D. Ill. July 10, 2013).  On December 30, 2013, Hill filed the present § 2255 Petition.

## ANALYSIS

In his § 2255 Petition, Hill asserts that this Court lacked jurisdiction to revoke his term of supervised release and to sentence him to further imprisonment.  Hill also alleges ineffective assistance of counsel on the part of Assistant Federal Public Defender Dan Hillis as well as malicious prosecution on the part of Assistant United States Attorney Gregory Harris and United States Probation Officer Lynea Turner.

## I. This Court Had Jurisdiction to Revoke Hill's Supervised Release and to Sentence Him to Further Imprisonment.

Hill first asserts that this Court lacked jurisdiction to revoke his term of supervised release and to sentence him to further imprisonment because he was "unable to legally begin supervised release." § 2255 Pet., d/e 1, at 4. Therefore, Hill insists, the Court's judgment of revocation and sentence of additional imprisonment was a violation of Due Process. Id. at 10. By statute, a term of supervised release "commences on the day the person is released from imprisonment." 18 U.S.C. § 3624(e). According to Hill, he had not been "released" from BOP imprisonment since he had not yet fulfilled the original prison sentence, as reflected in the federal detainer lodged against him.

This Court did have jurisdiction to revoke Hill's supervised release and sentence him to further imprisonment because Hill had legally begun supervised release. The United States Supreme Court has interpreted § 3624(e) in a "commonsense" and "strictly temporal" fashion: In United States v. Johnson, the defendant Johnson sought a modification of his term of supervised release after his sentence of imprisonment was reduced to a term shorter

than the period of time he had already served in prison.  529 U.S.

53, 55 (2000).  Johnson filed a motion requesting that his term of

supervised release be "credited" and reduced by 2.5 years, the

excess period of imprisonment he had already served.  Id. at 54–55.

Johnson's motion was unsuccessful at the trial court, but Johnson

prevailed before a divided panel of the United States Court of

Appeals for the Sixth Circuit.  Id. at 55.  Yet, the Supreme Court

unanimously reversed the Sixth Circuit, denying Johnson any

credit against his supervised release for the time served in prison.

Id.  The Court reasoned that the plain language of § 3624(e)

controlled when a term of supervised release would commence:

> [A] supervised release term does not commence until an
> individual "is released from imprisonment."  There can be
> little question about the meaning of the word "release" in
> the context of imprisonment.  It means "[t]o loosen or
> destroy the force of; to remove the obligation or effect of;
> hence to alleviate or remove; . . . [t]o let loose again; to
> set free from restraint, confinement, or servitude; to set
> at liberty; to let go."  Webster's New International
> Dictionary 2103 (2d ed.1949).  As these definitions
> illustrate, the ordinary, commonsense meaning of release
> is to be freed from confinement.  To say respondent was
> released while still imprisoned diminishes the concept
> the word intends to convey.

Id. at 57 (emphasis added).  Furthermore, the Court reasoned, "[t]he

phrase 'on the day the person is released,' in the second sentence of

§ 3624(e), suggests a strict temporal interpretation." Id.

Accordingly, Johnson could not receive credit to his term of supervised release because his term of supervised release could not begin while he was still imprisoned. Finally, 18 U.S.C. § 3583(a), the statute authorizing the imposition of "a term of supervised release after imprisonment," lent additional support to the Court's conclusion that "[r]elease takes place on the day the prisoner in fact is freed from confinement." Id. at 58.

Hill argues that his supervised release did not begin on the day he in fact was freed from confinement—April 30, 2012, the day of his discharge from IDOC—merely because a federal detainer had been lodged against him, and because it was IDOC rather than BOP who released him. In support of this position, Hill asserts that the fact that a person is physically allowed to leave prison does not mean that that person has been "released" from imprisonment under 18 U.S.C. § 3624(e). See Pet'r's Mot. Supplement Status Conference, d/e 29, at ¶¶ 6–10 (citing United States v. Earl, 729 F.3d 1064, 1068 (9th Cir. 2013)).

In Earl, the defendant Earl, whose sentence included a term of five years' supervised release, argued that his supervised release

had begun when BOP transferred him from prison to a halfway house, sometime before his supervised release officially began in June 2007.  <u>Id.</u> at 1066.  Therefore, Earl argued, the district court did not have jurisdiction to revoke his supervised release when a petition to revoke was filed in February 2012, more than five years after the transfer.  <u>See</u> <u>id.</u>  The Court of Appeals for the Ninth Circuit affirmed the revocation judgment, holding that because Earl had been in BOP custody at the halfway house, his term of supervised release did not begin until he was released from the halfway house in June 2007.  <u>Id.</u>  Therefore, Earl was still serving the five-year sentence of supervised release in February 2012, and the district court properly exercised its jurisdiction when it revoked him.  <u>Id.</u>

Hill's reliance on <u>Earl</u> is off the mark.  Unlike Earl, who remained in BOP custody at the halfway house following his transfer, Hill did not remain in BOP custody following his arrest on State charges and his State conviction for Aggravated Battery.  Rather, Hill was in IDOC custody, notwithstanding the lodging of the federal detainer.  After satisfying his State sentence, Hill was in fact freed from confinement on the day he was released from IDOC

custody—and was in fact released from further BOP custody because Jill Good of the United States Marshal's Office for the Central District of Illinois had told IDOC officials that Hill's federal sentence of imprisonment was satisfied.  Like the defendant in Johnson, Hill was released on the day he was freed from confinement, and, in strict temporal sequence, Hill's term of supervised release began that same day, as the plain language of § 3624(e) dictates.

While the text of § 3624(e) alone resolves the question, just as in Johnson, the purpose and design of the statute lends additional support to today's conclusion.  See id. at 59.  The objectives of a term of supervised release would be unfulfilled if, as Hill argues, a term of supervised release could not begin once a criminal defendant has been freed early—whether correctly or erroneously—but only once the full term of his sentence of imprisonment has elapsed.  As recognized in Johnson, Congress intended supervised release to assist individuals in their transition from incarceration into community life:  "[T]he primary goal [of supervised release] is to ease the defendant's transition into the community . . . ."  S. Rep. No. 98-225, at 124 (1983) (emphasis added).  Supervised release

cannot properly serve the purpose to smooth the transition from prison to freedom if, as Hill's argument would require, it could not begin until several weeks or months after the individual's actual discharge from custody simply because a detainer had once been lodged.

Furthermore, Hill knew of his obligation to report to the United States Probation Office upon his release from IDOC on April 30, 2012, and he reported as obligated on May 1, 2012, to sign an acknowledgement of the conditions of his release. These are the very steps any individual must take at the outset of a term of supervised release. Hill contends that his signature had no legal effect and that his term of supervised release could not begin until his term of imprisonment had expired. At very least, however, Hill's signature acknowledging the conditions of his supervised release demonstrates that Hill had notice of these conditions and the consequences for his failure to comply with them, including revocation and further imprisonment. And Hill himself has conceded in his multiple filings in this case that he met with United States Probation Officer Lynea Turner and signed the acknowledgement.

So, Hill began a valid term of supervised release when in fact he was released from IDOC custody, and he was on notice of the conditions of this release as well as the consequences for violating those conditions. Accordingly, this Court exercised proper jurisdiction over the April 26, 2013, petition for revocation. Therefore, this Court did not violate Hill's Due Process rights because this Court had the necessary authority to sentence Hill to further imprisonment upon the showing that Hill had violated the conditions of his release.

## II. Assistant Federal Public Defender Dan Hillis Provided Effective Assistance of Counsel.

Hill next asserts that he did not receive effective assistance of counsel from Assistant Federal Public Defender Dan Hillis. According to Hill, he and Hillis became involved in an argument at the July 8, 2013, revocation hearing because Hillis did not make the argument that is the subject of Hill's present § 2255 Petition, namely, that the Court lacked jurisdiction to revoke Hill's supervised release because he had not been properly released from his original sentence and, therefore, could not have legally begun supervised release. See § 2255 Pet., d/e 1, at 4. Hill also contends

that Hillis refused to file a notice of appeal of the revocation judgment, stating that "he felt there were no grounds or merits to appeal on." Id. Hill concedes, however, that Hillis did argue the amount of time owed on the original sentence. Id. Hill also concedes that he relied on Hillis's advice that there were no favorable grounds for appeal and that, by the time an appeal was processed, Hill would have served his full sentence. Id.

To show ineffective assistance of counsel, a petitioner must demonstrate: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. See Strickland v. Washington, 466 U.S. 668, 687 (1984). In determining whether counsel's performance was prejudicial, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A "reasonable probability is a probability sufficient to undermine the confidence in the outcome." Id. A court need not address the question of counsel's performance if it is easier to dispose of the claim due to a lack of prejudice. Id. at 697; Taylor v. Bradley, 448 F.3d 942, 949 (7th Cir. 2006).

At the revocation hearing, Assistant Federal Public Defender Hillis did not argue that this Court lacked jurisdiction—the argument that Hill advances in the present § 2255 Petition. This decision did not prejudice the outcome of the revocation hearing because the argument would have been no more successful then than it is today. As discussed above, this Court properly exercised jurisdiction to revoke Hill's supervised release and sentence him to further imprisonment. Therefore, the fact that Hillis declined to argue the Court lacked jurisdiction raises no probability of a different outcome.

Moreover, Hillis's performance was not deficient. When a petitioner does not instruct his lawyer to file an appeal or notice of appeal, the ineffective assistance of counsel inquiry begins with the question of whether the lawyer consulted with the defendant about the possibility of appeal and the defendant's desires concerning appeal. Roe v. Flores-Ortega, 568 U.S. 470, 478 (2000). Provided this consultation took place, a lawyer's performance is professionally deficient only where he fails to follow his client's express instructions with respect to an appeal. Id. In this case, Hill concedes that Hillis did consult with him about appeal; though

their discussion became heated, Hill also concedes that he relied upon Hillis's advice that his case lacked merit for appeal and therefore did not file an appeal. See § 2255 Pet., d/e 1, at 4 ("After the revocation hearing counsel and Petitioner discussed an appeal and Petitioner relied on counsel's advisement that he had no favorable grounds for appeal and that by time an appeal was processed Petitioner would be released."). Though Hill claims at isolated points in his voluminous filings that Hillis "deterred" him from pursuing an appeal, see § 2255 Pet., d/e 1, at 11; d/e 18, Pet'r's Mot. For Leave to File Reply, d/e 18, Ex. 1, at 10 (C.D. Ill. Mar. 17, 2014), or "coerced" him to forego an appeal, see id. at 5— claims that lack any factual support—Hill also concedes that he chose to file the § 2255 Petition instead of pursuing an appeal because Hillis had advised him there was no merit to an appeal. See id. ("Let the record show Petitioner did wish to file an appeal but that when counsel told him he [saw] no merits Petitioner felt he was on his own and decided to file the present petition pursuant to 28 U.S.C. § 2255.").

Hillis's performance was not deficient because he did consult with Hill about appeal and because Hill ultimately relied on Hillis's

professional judgment as to the merits of an appeal. Moreover, Hillis's decision not to file an appeal did not prejudice Hill because the argument Hill wished to pursue on appeal, the Court's lacking jurisdiction, would not have carried the day. Accordingly, nothing about Assistant Federal Public Defender Hillis's performance was deficient, nor did it prejudice Hill in the revocation proceeding in any way.

## III. Hill Presents No Evidence Demonstrating Prosecutorial Misconduct.

Hill also levels the accusation in his § 2255 Petition that the decision by Assistant United States Attorney Gregory Harris and United States Probation Officer Lynea Turner to petition the Court for revocation of Hill's supervised release amounted to "malicious prosecution." See § 2255 Pet., d/e 1, at 11 ("We must also question on their part [whether] or not this was 'plain ignorance' to the law or 'vindictiveness' and 'malicious prosecution.'") Malicious prosecution is a common law tort in state law, for which the typical remedy is damages. See Swick v. Liautaud, 662 N.E.2d 1238 (Ill. 1996) (delineating the elements of the tort of malicious prosecution under Illinois common law, including "damages resulting to the

plaintiff"); <u>Bryant v. City of Chicago</u>, 746 F.3d 239, 241 (7th Cir. 2014) (describing an action for malicious prosecution brought under 42 U.S.C. § 1983, which permits damages for violations of constitutional rights).  Hill, however, has sought only his release in the present § 2255 Petition.  Consequently, the Court interprets Hill's accusation as one of prosecutorial misconduct, for which, if proven, the remedy of release may be available.

No evidence exists to support an accusation of prosecutorial misconduct in Hill's revocation.  At worst, Hill's Petition can be read to allege that the Probation Office and the U.S. Attorney's Office were unaware of the detainer, though they should have known about it, when his supervised release began on April 30, 2012, or when he met with Turner on May 1, 2012.  <u>See</u> § 2255 Pet., d/e 1, at 4.  This mistake resulted in Hill's <u>early release</u> from custodial confinement—an early release that Hill attempts to characterize as prejudicial to him.  Though potentially dangerous to the public, it is hard to conceive of circumstances in which such an early release could prejudice an offender in Hill's position.  Furthermore, though Harris and Turner may indeed have initiated revocation proceedings in April 2013 to "punish" Hill for the alleged violation conduct,

§ 2255 Pet., d/e 1, at 11, seeking punishment for violations of the conditions of supervised release cannot be prosecutorial misconduct.  See, e.g., United States Sentencing Commission Guidelines Manual 479 (2013) (describing revocation, in Chapter 7 Part A, as a form of "sanctioning violations of . . . supervised release" (emphasis added)); id. 482 (introducing the policy statements of Chapter 7 Part B as "penalties . . . for the violation of the judicial order imposing supervision" (emphasis added)).

Hill also alleges that the introduction of the federal detainer at his May 9, 2013, hearing was prejudicial because it resulted in his detention before his final revocation hearing.  See Pet'r's Mot. for Leave to File Reply, d/e 18, Ex. 1, at 13.  But nothing about the federal detainer could have prejudiced Hill because, at that May 9 hearing, before U.S. Magistrate Byron G. Cudmore, Hill waived his right to a formal detention hearing.  See Minute Entry, United States v. Hill, No 05-cr-30098 (C.D. Ill. May 9, 2013).

Finally, Hill heaps one meritless accusation after another on Harris and Turner in an attempt to cast the revocation of his supervised release as the culmination of a pattern of government deceit.  No evidence exists to support these accusations, and the

Court will save Harris and Turner the indignity of repeating these accusations only to dispose of them in summary fashion. At root, the conduct of Harris and Turner in the revocation proceedings against Hill was wholly above board and professional. To make out a claim for prosecutorial conduct, Hill must show not only that Harris or Turner engaged in misconduct, but also that this misconduct resulted in revocation proceedings that were unfair. But as previously discussed, Hill's fundamental objection to the fairness of the proceedings, that this Court lacked jurisdiction, is unfounded. Accordingly, Hill has failed to demonstrate any misconduct or unfairness, and a claim of prosecutorial misconduct must fail.

## IV.  Hill Committed Violations of the Conditions of His Supervised Release Subjecting Him to Revocation Proceedings Regardless of Whether His Release From Custody in April 2012 Was Proper.

Finally, Hill committed violations of the conditions of his supervised release that would have subjected him to revocation proceedings, whether or not the detainer had resulted in his transfer to BOP custody. As previously discussed, Hill's judgment of revocation was predicated on four offenses for which he was

found culpable:  Possession of cocaine as shown by a positive urine test on August 30, 2012 (Violation Number 1B); missed drug tests in July and December of 2012 (Violation Numbers 2A and 2B); and a violation of Illinois drug possession law in March 2013 (Violation 1C).  <u>Compare</u> Pet. for Revocation, <u>United States v. Hill</u>, No. 05-cr-30098 (C.D. Ill. Apr. 26, 2013), <u>and</u> Revocation J., <u>United States v. Hill</u>, No. 05-cr-30098 (C.D. Ill. July 10, 2013).  Even if Hill had been returned to BOP custody and had served an additional four months' imprisonment after he was discharged from IDOC custody on April 30, 2012, he would have been released from custody no later than August 30, 2012.  Three of the four violations resulting in Hill's revocation took place on or after August 30, 2012.  Therefore, on any conceivable timeline, following the end of IDOC and BOP custody, Hill would have been free to engage in the unlawful conduct for which he was revoked and would have been subject to the conditions of his original, lawful supervised release.  Accordingly, Hill would have been properly subject to revocation proceedings for that conduct.  As such, this Court had jurisdiction to revoke his supervised release and sentence him to a term of further imprisonment.

## CONCLUSION

For the foregoing reasons, Hill has failed to show that he is entitled to relief, and his § 2255 Petition (d/e 1) is DISMISSED. All motions to supplement the record (d/e 13; d/e 17; d/e 18; d/e 22; d/e 27; d/e 29) are GRANTED; each has been read and taken under advisement in rendering this decision. All other pending motions in this matter (d/e 3; d/e 4; d/e 7; d/e 11; d/e 12) are DENIED AS MOOT.

IT IS SO ORDERED.

ENTER: July 31, 2014

FOR THE COURT:           ___s/Sue E. Myerscough_____
                         SUE E. MYERSCOUGH
                         UNITED STATES DISTRICT JUDGE